(July 25, 1996)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SPYRIDON FIORAVANTES, Appellant. [646 NYS2d 893] —Mercure, J. P. Appeal from a judgment of the County Court of Ulster County (Vogt, J.), rendered March 10, 1987, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the first degree.

On August 4, 1985, Dominick Lofaro, a confidential informant for the New York State Organized Crime Task Force, negotiated for the purchase from defendant of a half pound of heroin, ostensibly on behalf of an unidentified "black guy". During the meeting, which took place at Lofaro's house, Lofaro was outfitted with a radio transmitter and the conversation with defendant was monitored and recorded by Task Force Investigator Ronald Clark. On August 14, 1985, undercover Task Force Investigator Alvin Jones, posing as the purchaser, met with defendant at Lofaro's home and purchased nearly nine ounces of heroin for $35,000. Jones paid $25,000 at that time and met with defendant again on August 21, 1985 to pay the $10,000 balance. Jones' meetings with defendant were also recorded. Indicted for criminal sale of a controlled substance in the first degree, convicted after trial and sentenced to an indeterminate prison term of 20 years to life, defendant now appeals.

Initially, we are not persuaded that County Court abused its discretion and deprived defendant of a fair trial by denying his initial request for an interpreter. In advance of trial, defendant (who is of Greek national origin) indicated that he did not require the services of an interpreter. Then, during voir dire, defendant reversed himself and indicated that he needed an interpreter. At that time, County Court denied the request upon the ground that it had just listened to the audio tapes of the three August 1985 meetings at Lofaro's house and found defendant to have absolutely no difficulty understanding or speaking English.

Subsequently, during cross-examination of the People's second trial witness, defendant renewed the request and, in an effort to "accommodate" defendant, County Court secured the services of an interpreter to assist him. Although the interpreter appears to have been present at defendant's counsel table throughout the remainder of the trial, we note that defendant took the stand and testified on his own behalf in English. Based upon the foregoing and upon our review of the record, we conclude that there is no merit to the contention that defendant was unable to speak and understand English (*see, People v Rodriguez*, 221 AD2d 820, 821, *lv denied* 87 NY2d 924). In addition, in the absence of an objection raised at trial, defendant's current challenge to the interpreter's official status and linguistic capabilities is unpreserved for our review (*see, People v Perez*, 198 AD2d 446, 447, *lv denied* 82 NY2d 929; *People v Pellor*, 179 AD2d 844, 845, *lv denied* 79 NY2d 951).

We are further unpersuaded that defendant was deprived of

a fair trial because he was briefly exhibited to venirepersons in shackles. It is well settled that a juror's brief and inadvertent viewing of a defendant in restraints does not by itself constitute reversible error (see, People v Harper, 47 NY2d 857, 858; People v Dawson, 125 AD2d 860, 861-862, lv denied 69 NY2d 879; People v Mattison, 97 AD2d 621, 623). Further, in the absence of any request by defendant, County Court had no obligation to instruct the jury that defendant's restraint had no bearing on the issue of his guilt or innocence (see, People v Rouse, 79 NY2d 934, 935; People v Vaughn, 175 AD2d 414, 415).

Defendant's additional contentions addressed to County Court's trial rulings are similarly unavailing. After listening to the tapes of the three August 1985 meetings at Lofaro's house, we perceive no basis for disturbing County Court's determination as to their audibility (see, People v Lubow, 29 NY2d 58, 68; People v Watson, 172 AD2d 882, 883; People v Warner, 126 AD2d 788, 789, lv denied 69 NY2d 887) or its decision to admit transcripts as an aid to the jury (see, People v Watson, supra, at 883; People v Norwood, 142 AD2d 885, lv denied 72 NY2d 960; People v Warner, supra, at 789). There was a good faith basis for the People's question regarding whether John Gotti "got a cut" from defendant's illegal gambling activities, and the comment did not deprive defendant of a fair trial in any event (see, People v Gonzalez, 206 AD2d 946, 947, lv denied 84 NY2d 867; People v Gutkaiss, 206 AD2d 628, 631, lv denied 84 NY2d 936). Finally, there is no merit to defendant's claim of Rosario violations.

We are persuaded, however, that defendant's postconviction cooperation with law enforcement authorities constitutes an extraordinary circumstance warranting reduction of his sentence in the interest of justice. Notably, letters have been submitted on defendant's behalf by Kevin McGrath and Michael Considine, Assistant United States Attorneys, and Barbara Di Tata, Task Force Attorney. The People graciously and enthusiastically acknowledge defendant's "invaluable assistance to a myriad of law enforcement agencies" and his "key role" in providing information, and also in identifying potential witnesses and loanshark victims and urging various individuals to cooperate with Federal authorities. According to the People: "His voluntary cooperation and commitment not only resulted in the successful prosecution of multiple high level organized crime figures in New York from both the Gambino and Luchese crime families, but as a result of these convictions, the Velentzas gambling and loansharking enter-

prises were completely disbanded. In fact, the Velentzas investigation marked the first successful prosecution of organized crime in the Greek community in New York City."

In the absence of any objection to our consideration of post-conviction memoranda, and it appearing that the interest of justice will be well served, we shall reduce defendant's sentence to an indeterminate term of imprisonment of 15 years to life (*see, People v Chen*, 176 AD2d 628; *People v Hiemel*, 49 AD2d 769).

Crew III, Casey, Peters and Spain, JJ., concur. Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by reducing defendant's sentence to an indeterminate prison term of 15 years to life, and, as so modified, affirmed.